UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DONALD BROOKS,
   Petitioner,

vs.         Case No.:  3:19cv1673/MCR/EMT

MARK S. INCH,
   Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Donald Brooks (Brooks) filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1).  Respondent (the State) filed an answer and relevant portions of the state court record (ECF No. 20).  The court provided Brooks an opportunity to file a reply (*see* ECF No. 22), but he has not done so as of the date of this Report and Recommendation.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is

further the opinion of the undersigned that the pleadings and attachments before the court show that Brooks is not entitled to habeas relief.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 20).[1]  Brooks was charged in the Circuit Court in and for Okaloosa County, Florida, Case No. 2014-CF-539, with several counts of burglary of an unoccupied dwelling and grand theft of $300 or more but less than $5,000 (Ex. 4).  On July 23, 2015, a jury found Brooks guilty of four counts of burglary of an unoccupied dwelling and four counts of grand theft (Counts 1–6 and 11–12 of the Amended Information) (*see* Exs. 4, 8).  On September 2, 2015, the court sentenced Brooks as a habitual felony offender to a total of eighty years in prison, with a three-year minimum mandatory on each count (Ex. 9).  The court ordered the sentences to run consecutively to the sentence previously imposed on June 23, 2015, on two severed counts (*id.*).

Brooks, through counsel, appealed the judgment to the Florida First District Court of Appeal (First DCA), Case No. 1D15-4511 (Ex. 10).  The First DCA affirmed the judgment per curiam without written opinion on December 30, 2016

---

[1] Citations to the state court record refer to the exhibits submitted with the State's answer (ECF No. 20).  If a cited page has more than one page number, the court refers to the "Bates stamp" page number in the middle of the bottom of the page.

(*see* Ex. 13).  *Brooks v. State*, 229 So. 3d 322, 2016 WL 7494923, at *1 (Fla. 1st DCA 2016) (Table).  The mandate issued January 18, 2017 (*see* Ex. 13).  Brooks sought certiorari review in the United States Supreme Court, No. 16-8585, but the Court denied review (*see* Ex. 13).

On May 11, 2017, Brooks filed a petition for writ of habeas corpus in the First DCA, Case No. 1D17-1971, alleging ineffective assistance of appellate counsel (Ex. 14).  The First DCA denied the petition on the merits on June 6, 2017, and denied Brooks' motion for rehearing on July 31, 2017 (Ex. 15).  *Brooks v. State*, 227 So. 3d 566 (Fla. 1st DCA 2017) (Table).

On August 10, 2017, Brooks filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. 16).  On September 20, 2017, the state circuit court dismissed the motion as facially insufficient, without prejudice to Brooks' filing an amended motion within sixty days (Ex. 17).  Brooks filed a timely amended motion on October 6, 2017 (Ex. 18).  On January 30, 2018, the circuit court again dismissed the motion as facially insufficient, without prejudice to Brooks' filing a second amended motion within sixty days (Ex. 19).  Brooks filed a second amended motion on February 26, 2018 (Ex. 20).  The circuit court summarily denied the second amended Rule 3.850 motion on June 4, 2018 (Ex. 21).  Brooks appealed the decision to the First DCA, Case No.

1D18-2911 (Ex. 22).  The First DCA affirmed the circuit court's decision per curiam without written opinion on March 1, 2019 (*see* Ex. 24).  *Brooks v. State*, 266 So. 3d 143 (Fla. 1st DCA 2019) (Table).  The mandate issued March 29, 2019 (*see* Ex. 24).

Brooks filed the instant federal habeas action on June 7, 2019 (ECF No. 1).

## II.    STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[2]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean

the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this

presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74

(quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under

§ 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S.

at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete
> bar on federal-court relitigation of claims already rejected in state
> proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333,
> 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata
> rule" under § 2244). It preserves authority to issue the writ in cases
> where there is no possibility fairminded jurists could disagree that the
> state court's decision conflicts with this Court's precedents. It goes no
> further. Section 2254(d) reflects the view that habeas corpus is a "guard
> against extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal. *Jackson v.
> Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560
> (1979) (Stevens, J., concurring in judgment). As a condition for
> obtaining habeas corpus from a federal court, a state prisoner must
> show that the state court's ruling on the claim being presented in federal
> court was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any possibility
> for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a

petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See*

*Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the petitioner must

show that he is in custody "in violation of the Constitution or laws and treaties of the

United States," *see* 28 U.S.C. § 2254(a), and that the constitutional error resulted in "actual prejudice," meaning, the error "had a substantial and injurious effect or influence in determining the jury's verdict," *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted).

III.    BROOKS' CLAIMS[3]

    **A.    Ground Four: "Petitioner's conviction obtained in violation of his Fifth Amendment right not to incriminate himself."**

Brooks alleges during his interrogation by law enforcement, he stated, "You know what, let's stop right here." (ECF No. 1 at 9–10). Brooks argues this was an unequivocal and unambiguous invocation of his right to remain silent and terminate the interview (*id.*). Brooks contends law enforcement violated *Miranda v. Arizona*, 384 U.S. 436, 473–74 (1966) by continuing the interrogation (*id.*). Brooks states he did not present this claim to the state courts either on direct appeal or in his Rule 3.850 motion (*id.* at 10–11). He contends his procedural default should be excused because his appellate counsel was ineffective for failing to present the issue on direct appeal, and he was not afforded counsel in the post-conviction proceeding (*id.*).

The State contends Brooks exhausted this claim in the state courts by presenting it to the trial court in a motion to suppress and to the First DCA on direct

---

[3] For organizational reasons, the court addresses Brooks' claims in an order different than he presented them in his § 2254 petition.

appeal (*see* ECF No. 20 at 29).  The State contends Brooks has not demonstrated that the state courts' adjudication of the claim was contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable factual finding in light of the state court proceedings (*id.* at 29–32).

The State is correct that Brooks exhausted this claim (*see* Exs. 5, 6, 10, 13). Therefore, the court will determine whether the state courts' adjudication of the claim is entitled to deference under § 2254(d).

1.    Clearly Established Federal Law

In the context of invoking the *Miranda* right to counsel, the Supreme Court held that a suspect must do so "unambiguously."  *Davis v. United States*, 512 U.S. 452, 459 (1994).  If an accused makes a statement concerning the right to counsel "that is ambiguous or equivocal" or makes no statement, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights.  *Id.* at 459, 461–62.

The same standard applies in the context of invoking the *Miranda* right to remain silent.  *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).  An accused who wants to invoke his or her right to remain silent must do so unambiguously.  *Id.*  An unequivocal and unambiguous invocation of the right to remain silent is one articulated "sufficiently clearly that a reasonable police officer in the circumstances

would understand the statement **to be** a request" to exercise his right to remain silent and terminate the interrogation, not that it **might be** a request to remain silent. *Davis*, 512 U.S. at 459 (emphasis added). It must be a simple, unambiguous statement that he wants to remain silent or that he does not want to talk with the police. *Berghuis*, 560 U.S. at 382 (citations omitted).

2.    Federal Review of State Court Decision

In the trial court, defense counsel filed a motion to suppress some of Brooks' statements to law enforcement during a custodial interrogation on August 31, 2012 (Ex. 5 at 431–33). Defense counsel asserted that although Brooks initially waived his *Miranda* rights and agreed to speak with officers, approximately 18 minutes into the interrogation, Brooks stated, "You know what?  Let's stop right here." (*id.*). Defense counsel argued this statement clearly and unambiguously asserted Brooks' desire to invoke his right to remain silent; and officers were required to immediately cease the interrogation (*id.*). Counsel argued that any statements Brooks made after he invoked his right to remain silent should thus be suppressed (*id.*). Defense counsel attached a copy of the transcript of Brooks' interrogation with Investigator Mike Irwin and Investigator Randall Joiner (*id.* at 1084–1202).

The trial court held a hearing on the motion to suppress (Ex. 6 at 1032–38). In support of the motion to suppress, defense counsel presented a video recording of

the interrogation and the transcript of the interrogation (*id.*).  The court heard argument from the parties (*id.*).  Defense counsel argued that Brooks' statement, "You know what, let's stop right there" was an unequivocal and unambiguous invocation of his right to remain silent (*id.* at 1034–35).

The State presented the audio recording of the interrogation and Brooks' signed written waiver of his *Miranda* rights (Ex. 6 at 1033, 1035–37).  The State argued that when Brooks made the statement at issue, he was responding to Investigator Irwin's suggestion that he (Brooks) was committing burglaries to support his drug habit (*id.* at 1036–36).  The State argued that, considering the context in which Brooks made the statement, it was not an unequivocal, unambiguous invocation of his right to remain silent (*id.*).

The trial court took the matter under advisement and subsequently issued a written order denying the motion to suppress, without offering its reasons for doing so (Ex. 6 at 451).

On direct appeal to the First DCA, Brooks' appellate counsel argued, as Issue III, that the trial court erred in denying the motion to suppress, because Brooks' statement was an unambiguous invocation of his right to remain silent (Ex. 10).  The First DCA affirmed the trial court's ruling in an unexplained decision (Ex. 13).

The summary nature of the state courts' decisions (both the trial court's and the appellate court's) do not lessen the deference they are due under the AEDPA. *Richter*, 562 U.S. at 98 (holding that the state court decisions to which the AEDPA refers include summary dispositions, i.e., decisions without opinion).  Indeed, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  *Id.*  Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  *Id.*

Here, based upon the transcript of Brooks' interrogation, it was not unreasonable for the First DCA to conclude that Brooks' statement, "You know what, let's stop right there," in the middle of a give-and-take discussion about the evidence against Brooks, the ways he disposed of stolen property, and his drug use and contacts with drug dealers, was not an unequivocal invocation of Brooks' right to remain silent.

It is undisputed (and evidenced by the transcript of the interrogation) that investigators informed Brooks of his right to remain silent, and Brooks stated he understood that right **and** his right to invoke it at any time (*see* Ex. 5 at 1086). Investigator Irwin began the interrogation by telling Brooks that law enforcement

had evidence that Brooks and Paul Scofield were involved in burglaries in Pensacola (*id.* at 1087).  Irwin told Brooks they had video of Brooks selling jewelry which was identified as stolen during several burglaries (*id.*).  Brooks admitted he had pawned "stuff," and then complained that people were trying to set him up and pin crimes on him because he had a criminal record (*id.* at 1087–88).  Investigator Irwin circled back to the evidence they had that Brooks and Paul Scofield committed burglaries (*id.* at 1090).  Irwin told Brooks there was a video of him selling property that had been specifically identified by burglary victims as stolen, and that the video indicated Brooks was selling it only an hour and a half after the burglary (*id.*).  Irwin also told Brooks that his thumbprint was on some of the stolen jewelry (*id.* at 1091).  Brooks again admitted he pawned "stuff," but said he had bought the items (*id.*).  Brooks urged Irwin to charge him if Irwin thought there was enough evidence against him (*id.*).  Investigator Irwin assured Brooks that he would be charged (*id.*).  Brooks asked Irwin what he wanted, and Irwin responded, "I want to see what you have to say," and that Brooks was obviously not committing the burglaries alone (*id.*).  Investigator Irwin told Brooks he followed Brooks' brother Ronald and watched as Ronald met Brooks at Cash America Pawn (*id.* at 1093).  Irwin said he then watched Brooks go inside the pawn shop, where he pawned a diamond ring that was stolen during a burglary (*id.*).  Investigator Irwin then identified two other pawn

shops that received stolen jewelry from Brooks (*id.* at 1095).  Investigator Irwin asked Brooks what he was "willing to do" (*id.*).  Brooks responded, "Well, what do you want me to do?" (*id.*).  Investigator Irwin said he wanted the stolen property returned, and that the victims "would be more likely to work with you" if they had their property returned (*id.*).  Brooks asked Irwin to be more specific about the property he wanted back, and then Brooks asked, "What am I going to get out of it, Mike [Investigator Irwin]? . . .  [A]re y'all going to drop charges on me?" (*id.* at 1096–97).  Investigator Irwin responded that charges would not be dropped, but that Brooks would have "a lot more leeway" if he returned the stolen property (*id.* at 1097).  Brooks responded, "Yeah.  If I can find it." (*id.* at 1098).  Brooks said there were other people involved, but he could not contact anyone except his mother from the jail (*id.*).  Investigator Joiner said they knew that other people were involved in the burglaries, but they also knew that Brooks knew more about the burglaries than he was saying (*id.*).  Investigator Irwin told Brooks they had a video of him, Paul Schofield, and Schofield's relative (Brian) at a Sports Academy store using a stolen credit card (the theft of the credit card and burglary of the owner's home were the subject of two of Brooks' convictions at issue in this habeas case) (*id.* at 1099–1101).  Brooks asked, "What do you want me to do, Mike?" (*id.* at 1102).  Investigator Irwin responded, "We want the stuff back, Donnie" (*id.*).

This led to a discussion of Brooks' drug use.  Investigator Irwin said they knew that some of the stolen property "went to crack town" (Ex. 5 at 1102).  Irwin said he wanted Brooks to admit he had a problem with crack or meth (*id.*).  Brooks responded he had smoked crack in the past and smoked it "here and there . . . [e]very now and then," with the last time being two weeks ago (*id.* at 1102–03).  Investigator Irwin told Brooks that the evidence was "starting to build up on you" (*id.* at 1103).  Brooks said he knew that, and that his girlfriend told him to cooperate and not to "let everyone sink it on you" (*id.*).  Brooks said he didn't want to take the fall, but he also didn't want to be a snitch (*id.*).  The investigators told Brooks that the other people involved in the burglaries were pointing fingers at him and were going to "give you up" (*id.* at 1104).  Brooks said he knew that, and if the investigators could convince the prosecutor to agree to run the sentences on his Florida charges and his Alabama charges concurrently, he would assist them (*id.*).  Brooks also said he would try to find the stolen property if he could be released on bond (*id.*).

Investigator Irwin told Brooks, "you are not [a] rookie to this, Donnie," and that there was no need to "sugarcoat[ ] this whole scene" (Ex. 5 at 1106).  Investigator Irwin asked Brooks if the stolen electronics were in "crack town" (*id.* at 1106–07).  Brooks responded that some of them were there (*id.* at 1107).  Brooks identified "Big Wayne" as one of the crack dealers who received stolen electronics

(*id.* at 1108).  At that point (18 minutes into the interrogation, according to defense

counsel), the following exchange occurred:

> THE WITNESS [Brooks]:  If I hadn't had been—I was stupid. If I would had [sic] stayed out of pawn shops, you know what, Mike, it never would have come back on me.  Nothing.  That's all I had to do.
>
> INVESTIGATOR IRWIN:  It eventually does.
>
> THE WITNESS:  Yeah.  You know—
>
> INVESTIGATOR IRWIN:   Because, you know, eventually somebody is going to say—
>
> THE WITNESS:  Well, eventually, somebody is going to say something, but prove it.  Do you know what I am saying?  That's their word against mine.  Do you know what I am saying?
>
> INVESTIGATOR IRWIN:  Yeah.  But, Donnie, what you don't understand, dude, you are on dope.
>
> THE WITNESS:  And you know what? Let's stop right here.
>
> INVESTIGATOR IRWIN:  You doing [sic] this to feed a habit.
>
> (BOTH PARTIES SPEAKING OVER EACH OTHER.)
>
> THE WITNESS:  Do you know what, Mike?  The last time I got in trouble, you know what, I begged them people [sic] to give me treatment.  I have been to prison three times and begged for treatment.  Do you know what?  They never give it [sic] to me.  Never give it [sic] to me.  Never give it.  But a crack dealer will come in here that sells crack on the street, and they will go up there and ask for it one time, they will send him to him [sic], give it to him.

I have never ever been allowed to have any treatment.  I begged and begged and begged for treatment and never been able to get it.  Not once.

INVESTIGATOR IRWIN:  Do you know why?

THE WITNESS:  Why?

INVESTIGATOR IRWIN: Burglaries.

THE WITNESS:  What does that have to do [sic]?  But somebody can sell crack and they can get it?

INVESTIGATOR IRWIN:  Pretty much.  Yeah.

. . . .

THE WITNESS:  Why do they think—why do they think people steal for [sic]?  They don't steal just to be stealing.

INVESTIGATOR IRWIN:  I am not—I don't disagree with you.

(Ex. 5 at 1111–13).  Brooks and the investigators continued to discuss drug treatment programs, and Brooks admitted he was offered treatment but refused it (*id.* at 1113–15).  They discussed the fact that Brooks' brother was also a drug addict, and that the family's business was failing (*id.* at 1115–17).  The investigators told Brooks he was a "pro" burglar, since he had been caught on only 1% of the burglaries he had committed, and that he had "nerves of steel" (*id.* at 1118–20).  Brooks responded that he wasn't a bad person; but he often needed money and hated to borrow it (*id.* at 1120–23).  The interview continued, with Brooks admitting to all of the burglaries and thefts underlying his convictions at issue in this habeas case (*id.* at 1163–65).

Case No.:  3:19cv1673/MCR/EMT

Viewed in its context, a fairminded jurist could agree with the First DCA's conclusion that Brooks' statement, "Let's stop right here"—made in response to Investigator Irwin's accusing him of stealing to support his drug habit, and in the middle of a give-and-take discussion about the evidence against Brooks, the ways he disposed of stolen property, and his drug use and contacts with drug dealers— was not an unequivocal and unambiguous invocation of his right to remain silent and terminate the interrogation. *See Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1194 (11th Cir. 2012) (holding that it was not unreasonable for the state court to conclude that the petitioner's two statements about not wanting to "talk about it"—which were isolated statements, made nearly 30 minutes apart, in response to questions about very specific details, in the midst of a give-and-take discussion of the evidence against him—did not constitute an unequivocal invocation of his right to remain silent).

Brooks has not demonstrated that the state court's adjudication of his Fifth Amendment claim was contrary to or an unreasonable application of *Miranda*, *Davis*, or *Berghuis*. Therefore, he is not entitled to federal habeas relief on Ground Four.

**B.     Ground One:    "Ineffective assistance of counsel—failure to investigate, depose, and call alibi witnesses."**

Brooks faults defense counsel for failing to investigate and call Janeen Deriemacker as an alibi witnesses (ECF No. 1 at 5). Brooks alleges he told counsel, months before trial, that Ms. Deriemacker would be able to provide an alibi for the burglaries, and he provided counsel with her address and telephone number (*id.*). Brooks alleges counsel failed to file a timely notice of alibi; therefore, the trial court precluded defense counsel from presenting Ms. Deriemacker's testimony at trial (*id.*). Brooks alleges Ms. Deriemacker was available and willing to testify (*id.*). He alleges if counsel had presented her testimony, there is a reasonable probability the jury would have returned a different verdict (*id.*). Brooks asserts he presented this claim in his Rule 3.850 motion and his appeal of the circuit court's denial of the motion (*id.* at 6).

The State contends Brooks did not exhaust this ineffective assistance of trial counsel (IATC) claim (ECF No. 12 at 20). The State contends Brooks failed to fairly present his IATC claim in the circuit court, because it was facially insufficient in that he did not sufficiently allege prejudice (*id.*). The State further argues Brooks failed to properly present his IATC claim in the post-conviction appeal, because he did not address the reasons the circuit court's dismissal of his claims as facially insufficient was improper (*id.*). The State contends Brooks' failure to properly present his IATC claim to the state courts renders the claim unexhausted and

procedurally barred from federal review (*id.*).  But the State then argues Brooks did not procedurally default the claim in the state courts (*id.* at 20–21).  The State contends the state courts adjudicated the merits of the claim, and the state courts' adjudication was not contrary to or an unreasonable application of clearly established federal law (*id.* at 20–22).

1.    Exhaustion and Procedural Default

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." *Picard*, 404 U.S. at 277–78.

A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270–71 (11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the

state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'") (quoting *Kelley*, 377 F.3d at 1344–45).  Courts apply "fair presentation" principles "with common sense and in light of the purpose underlying the exhaustion requirement—namely, giving the state courts 'a meaningful opportunity' to address the federal claim." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (quoting *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005)).

A claim that was not exhausted in state court and which no longer can be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839–40, 848 (1999).  A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).

Upon review of Ground One of Brooks' second amended Rule 3.850 motion (*see* Ex. 20 at 6–8), the undersigned concludes that Brooks fairly presented the same federal IATC claim that he presents as Ground One of his § 2254 petition.  Further, Brooks argued this IATC claim in his initial brief in the post-conviction appeal (*see* Ex. 22).  Brooks thus satisfied the exhaustion requirement as to Ground One.

Further, as the State concedes, the state court's denial of relief on Brooks' IATC claim as insufficiently pled constitutes a ruling on the merits. *See Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 912–13 (11th Cir. 2009); *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1286 (11th Cir. 2012) ("a Florida state court's dismissal of a postconviction claim for facial insufficiency constitutes—at least for purposes of the procedural default analysis—a ruling 'on the merits' that is not barred from our review") (citing *Borden v. Allen*, 646 F.3d 785, 810–13 (11th Cir. 2011)). Therefore, the court will determine whether Brooks has demonstrated that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law.

2.    Review Under Section 2254(d)

a.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To obtain relief under *Strickland*, the petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If the petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was "reasonable considering all the circumstances," and reasonableness is measured "under prevailing professional norms." *Strickland*, 466 U.S. at 688. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting *Chandler*, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected— and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001)).

If the record is not complete regarding counsel's actions, "then the courts should presume that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might

do." *Jones*, 436 F.3d at 1293 (citing *Chandler*, 218 F.3d at 1314–15 n.15).  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence." *Jones*, 436 F.3d at 1293 (citing *Strickland*, 466 U.S. at 690); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

As to the prejudice prong of the *Strickland* standard, the petitioner's burden of demonstrating prejudice is high.  *See Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002).  To establish prejudice, the petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Jones v. GDCP Warden*, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding.  *Id.* (citation omitted).  And the petitioner must show that the likelihood of a different result is substantial, not just conceivable. *Williamson v. Fla. Dep't of Corr.*, 805 F.3d 1009, 1016 (11th Cir. 2015) (citing

*Richter*, 562 U.S. at 112).  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Strickland*, 466 U.S. at 695. The prejudice assessment does "not depend on the idiosyncracies [sic] of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.  *Id.* at 695.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland's* high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788.  As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The

question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

b.   Federal Review of State Court Decision

As previously discussed, Brooks presented Ground One as Ground 1 of his second amended Rule 3.850 motion (Ex. 20 at 6–8).  Brooks submitted an affidavit of Mary Janeen Boothe which stated:

I, Mary Janeen Boothe, do here declare that the following statement is true and correct and made of my own free will, from my own personal knowledge:

On August 17, 2012, Donnie Brooks was in my presence helping me move my belongings out of storage into my new home.  This took the entire day and continued into the next day.  Donnie remaining in my presence the entire time.

(Ex. 20 at 38).[4]

In the state circuit court's written decision denying the claim, the court cited *Strickland* as the applicable legal standard (Ex. 21).  The court adjudicated the claim as follows:

In Grounds 1 through 5 of the motion, Defendant claims that trial counsel was ineffective.  The Court finds that the claims are facially insufficient in that Defendant fails to allege proper prejudice.  *See Jones v. State*, 998 So. 2d 573, 584 (Fla. 2008) ("A mere conclusory allegation that the outcome would have been different is insufficient to state a claim of prejudice under *Strickland*; the defendant must demonstrate

---

[4]  The court assumes that Mary Janeen Boothe and Janeen Deriemacker are the same person.

how, if counsel had acted otherwise, a reasonable probability exists that
the outcome would have been different—that is, a probability sufficient
to undermine confidence in the outcome.").  Because Defendant has
been given two opportunities to amend and the claims are still facially
insufficient, the Court concludes that the claims should be dismissed
with prejudice.  *See* Fla. R. Crim. P. 3.850(f)(2); *Nelson v. State*, 977
So. 2d 710, 711–12 (Fla. 1st DCA 2008); *Oquendo v. State*, 2 So. 3d
1001, 1006 (Fla. 4th DCA 2008).

(Ex. 21).

Brooks appealed the circuit court's decision to the First DCA and argued this

issue in his initial brief (*see* Ex. 22).  The First DCA affirmed the circuit court's

decision without explanation (Ex. 24).

The state court reasonably rejected Brooks' IATC claim on *Strickland*'s

prejudice prong.  At Brooks' trial, the jury watched and heard the video and audio

recording of Brooks' interview with investigators (discussed *supra* in Ground Four)

(*see* Ex. 8 at 223–46).  During the interview, Brooks admitted he committed the

burglaries and thefts for which he was being tried:

> INVESTIGATOR IRWIN:  You did a house on C-180, which is
> you coming in—instead of turning on LG Russell Road to that house,
> you take a right by the Old Country Store (inaudible).  You know Ms.
> Madden, which is at 1446 County Road 180 [charged in Counts 11 and
> 12].  You took the jewelry.  Of course, y'all went to Pensacola, and you
> stole the credit cards, all that stuff; Brian, you and (inaudible).  The TV,
> the Sony, went to Donald.  You done that.  True?
>
> DONALD BROOKS:  (Nodded head.)

> INVESTIGATOR IRWIN:  All right.  You done—y'all went out on Tommy Thames Circle, the Huffmans [charged in Counts 1 and 2], the half-karat square diamond ring, the Sony PlayStation, the ammunition, all that stuff.  Y'all done that?
>
> DONALD BROOKS:  Yeah, I guess so—
>
> INVESTIGATOR IRWIN:  That was the same day.
>
> DONALD BROOKS:  Yeah.
>
> INVESTIGATOR IRWIN:  Jordan Road, the Turners [charged in Counts 3 and 4], y'all done that one, which is right around the corner from Ms. Madden, same day.  Jewelry box, gold-plated necklace, World War I Red Cross pin, small pocket knife with ivory handles, diamond earrings, small, round pewter jewelry box and whatnot.  True?
>
> DONALD BROOKS:  (Nodded head.)
>
> INVESTIGATOR IRWIN:  Then you went around to Looney Road, which is the same day [charged in Counts 5 and 6].  You hit a lady's doublewide trailer.  Y'all pulled right up to the front door and hit it.  Y'all took the pillowcase, a cartouche change with "Cindy" and "addiction" written on it, wood jewelry box, two wooden jewelry boxes and miscellaneous-type jewelry and necklaces and whatnot.  True?  Do you remember that?
>
> DONALD BROOKS:  Yeah.

(Ex. 8 at 243–44).  Considering Brooks' statements to investigators, there was no reasonable probability the jury would have returned a different verdict if Ms. Deriemacker had testified as an alibi witnesses.

Additionally, Brooks' assertion that Ms. Deriemacker was available and willing to testify is refuted by the trial transcript.  Prior to the presentation of

evidence, the court and the parties discussed whether Ms. Deriemacker would be permitted to testify (due to the defense's late disclosure of her as an alibi witness) (Ex. 8 at 67–73).  Defense counsel informed the court that he had spoken with Ms. Deriemacker on July 16 or 17 (a week before trial) (*id.* at 67–70).  Defense counsel stated he told Ms. Deriemacker the trial date and asked her to appear (*id.* at 71). Defense counsel stated he had made several attempts to speak with her since their initial conversation, but was unable to reach her (*id.* at 70–71).  The prosecutor stated she also attempted to contact Ms. Deriemacker, but with no success (*id.* at 68, 72–73).  The prosecutor also stated she checked telephone records from the jail and learned that Brooks attempted to call Ms. Deriemacker ten times over the last four days, but Ms. Deriemacker did not answer his calls (*id.* at 73).

Brooks has not demonstrated that the state courts' rejection of Ground One was contrary to or an unreasonable application of *Strickland*.  Therefore, he is not entitled to federal habeas relief on Ground One.

### C.    Ground Two:  "Ineffective assistance of counsel—failed to present exculpatory evidence and present a defense to charges."

Brooks asserts the State provided defense counsel with a letter from Paul Schofield, Brooks' co-defendant, to his (Schofield's) sister (ECF No. 1 at 7).  Brooks alleges defense counsel never told him about the letter (*id.*).  Brooks alleges that in the letter, Schofield intimates that he (Schofield) committed the burglaries, that he

wanted his sister to hide evidence from the police, and that he was willing to do whatever necessary to cut his prison time (*id.*).  Brooks alleges Schofield's letter would have supported his (Brooks') alibi defense and exposed the person who committed the burglaries (*id.*).  Brooks alleges the jury would not have found him guilty if defense counsel had called Schofield as a witness and used the letter to support Brooks' defense (*id.*).  Brooks asserts he presented this issue in his Rule 3.850 motion and in his post-conviction appeal (*id.* at 7–8).

The State asserts Ground Two was not fairly presented and is procedurally barred, for the same reasons as argued in Ground One (ECF No. 20 at 22–23).  The State also contends the state courts' adjudication of Ground Two is not contrary to or an unreasonable application of *Strickland* (*id.* at 23–26).

Upon review of Brooks' second amended Rule 3.850 motion, it is evident that the only claim remotely similar to the instant Ground Two is Ground 2, which asserts an IATC claim related to Paul Schofield's letter (*see* Ex. 20 at 9–11).  However, the nature of the two claims is substantially different.

Ground Two of Brooks' § 2254 petition faults defense counsel for failing to **call Paul Schofield as a defense witness** and confront him about the contents of the letter to his sister.  Brooks alleges if defense counsel had **presented Schofield's testimony to the jury**, the jury would have returned a different verdict.  However,

Ground 2 of Brooks' second amended Rule 3.850 motion faults defense counsel for **failing to tell Brooks about Schofield's letter**, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)  (*see* Ex. 20 at 9–11 & nn.6, 8).   In the Rule 3.850 motion, Brooks alleged that if defense counsel had **disclosed the letter to him**, the result of the trial proceedings would have been different (*id.*).

Additionally, Brooks failed to fairly and properly present his IATC claim to the First DCA in his post-conviction appeal.  In Florida, an appellant who files a brief when appealing a summarily denied post-conviction motion must raise and fully address in his brief all arguments on which he seeks appellate review.  The appellate court will not review claims that are not briefed.  *See Watson v. State*, 975 So. 2d 572, 573 (Fla. 1st DCA 2008) (holding that an appellate court "may review only those arguments raised and fully addressed in the brief"); *see also Roderick v. State*, 284 So. 3d 1152, 1154 (Fla. 1st DCA 2019) (holding that three of defendant's seven post-conviction claims were not subject to appellate review because the defendant did not argue them in his brief) (citing *Watson*, 975 So. 2d at 573).[5]

---

[5]  If an appellant does not file a brief when appealing a summarily denied post-conviction motion (which is not the case here), the appellate court is required to investigate all possible means of relief.  *Watson*, 975 So. 2d at 573 n.1; *see also* Fla. R. App. P. 9.141(b)(2).

In the past, the Eleventh Circuit interpreted Florida law differently.  In two unpublished decisions issued in 2007, the Eleventh Circuit held that when a Florida defendant does not receive an evidentiary hearing in his Rule 3.850 proceeding and appeals the circuit court's decision denying his motion, he satisfies the federal exhaustion requirement as to all claims raised in his

In Brooks' initial brief to the First DCA, he argued only Ground 1 (i.e., counsel's failure to investigate, depose, and present testimony from Janeen Deriemacker) (Ex. 21 at 5–10). Brooks did not present argument on Ground 2 (counsel's failure to tell him about Paul Schofield's letter). Brooks' failure to present Ground Two to the state courts renders the claim procedurally defaulted for federal habeas purposes.

Notwithstanding Brooks' failure to exhaust Ground Two, he is not entitled to federal habeas relief, because the claim is without merit. Brooks filed a copy of Paul Schofield's letter to his sister as an exhibit to his second amended Rule 3.850 motion (Ex. 19 at 30–35). In the letter, Schofield called Brooks a liar and a "snitch" (*id.* at 30). Schofield stated Brooks and his brother Ronnie "told on" Schofield and a man named Brian (*id.*). Schofield stated Brooks "recorded a conversation talking to me about stuff, you know what I mean" (*id.*). Schofield stated he initially did not intend

---

Rule 3.850 motion, even if he files a brief and fails to address each issue in his appellate brief. *See Darity v. Sec'y, Dep't of Corr.*, 244 F. App'x. 982, 984 (11th Cir. 2007); *Cortes v. Gladish*, 216 F. App'x 897, 899–900 (11th Cir. 2007). However, the Florida case upon which the Eleventh Circuit relied in *Darity* and *Cortes*, that is, *Webb v. State*, 757 So. 2d 608 (Fla. 5th DCA 2000), ceased to be the decisional law of the Fifth DCA in 2009. *See Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009); *see also Maxwell v. State*, 169 So. 3d 1264, 1265 n.1 (Fla. 5th DCA 2015) (holding, in a post-conviction appeal where the lower court summarily denied relief without evidentiary hearing, that the defendant abandoned two of his three grounds by failing to raise them in his appellate brief) (citing *Ward*, 19 So. 3d at 1061).

Case No.: 3:19cv1673/MCR/EMT

to talk to law enforcement, but "after they told me everything and showed me stuff, I had no choice." (*id.*).  Schofield stated:

> They got me on some stuff in Okaloosa County but there [sic] not going to put the charges on me yet.  They want me to bond out in Santa Rosa County because since [sic] Donnie told them that me, him, & Brian did all that stuff down there and Ronnie told them it was me & Donnie that did it all.  They were suppose [sic] to work with Mike [Investigator Irwin] about getting the stuff back.  They won't answer his calls and are trying to blame it on me & Brian. . . .  Anyway, said they would help me with the charges if I would testify against them.  I got no choice sis.

(*id.* at 30–31).  Schofield begged his sister to bond him out (*id.* at 31–34).  He stated he would probably receive a prison sentence (*id.* at 31–32).  Schofield apologized for treating his sister badly (*id.* at 31–32, 34), and asked her to hide his phone and car from law enforcement (*id.* at 33).

Brooks characterizes Schofield's letter as exonerating him and supporting his alibi defense, but the letter does neither.  Brooks states his alibi defense was that he was helping Janeen Deriemacker move into her new home on August 17, 2012, the day the four burglaries and four thefts occurred.  Schofield's letter offers nothing to support this alibi.

Additionally, Schofield's letter does not exonerate Brooks.  The letter clearly implicates Schofield in the criminal activities; but the jury heard, through the testimony of Investigator Irwin, that Paul Schofield was also charged with the

burglaries and thefts at issue (Ex. 8 at 255–69).  Further, Schofield's letter identifies Brooks as a participant; and the jury in Brooks' trial was instructed on a principal theory of liability (*see id.* at 325).  So the letter had little, if any, exculpatory value. For these reasons, defense counsel's failure to call Schofield as a witness was not deficient.

Moreover, there is no reasonable probability the jury would have returned a different verdict if defense counsel had called Paul Schofield as a witness.  As previously discussed, the jury saw the video of Brooks' interview with Investigator Irwin and heard Brooks admit he committed the four burglaries and four thefts for which he was being tried.  Schofield's statements in his letter would have only strengthened the inference that Brooks was a principal in the crimes.

Brooks has not shown that defense counsel was ineffective for failing to call Paul Schofield as a witness at trial.[6]  Therefore, Brooks is not entitled to federal habeas relief on Ground Two.

### D.    Ground Three:  "Ineffective assistance of counsel for misadvice during plea negotiations."

---

[6] Paul Schofield did not testify at Brooks' trial, so there is no basis for an IATC claim based upon defense counsel's failure to cross-examine Schofield with the statements in the letter (as opposed to calling him as a witness).

Case No.:  3:19cv1673/MCR/EMT

Brooks alleges defense counsel failed to advise him of the legal presumption that unexplained possession of recently stolen property gave rise to a presumption that he committed the burglaries (ECF No. 1 at 8–9).  Brooks also alleges defense counsel told him that Ms. Deriemacker would be called as an alibi witness (*id.* at 9). Brooks alleges had he known about the legal presumption or that defense counsel would not file a timely notice of alibi, he would have accepted the State's plea offer of 24.3 years, instead of proceeding to trial (*id.*).

Brooks concedes he did not present this IATC claim on direct appeal or in his Rule 3.850 motion (ECF No. 1 at 9).  He contends his failure to exhaust should be excused by his pro se status in the Rule 3.850 proceeding, pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012) (*id.*).

The State asserts an exhaustion defense and contends Brooks' failure to present Ground Three to the state courts renders the claim procedurally barred from federal review (ECF No. 20 at 26–28).  The State contends Brooks' procedural default may not be excused under *Martinez*, because *Martinez* applies only to post-conviction claims that were raised in state courts but not considered because of a state procedural bar (*id.* at 27).  The State also contends Ground Three lacks merit, so Brooks is not entitled to habeas relief notwithstanding the failure to exhaust (*id.* at 28–29).

In *Martinez*, the Supreme Court held that "when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a procedural default of an ineffective-assistance claim . . ." when (1) "the state courts did not appoint counsel in the initial-review collateral proceeding" or (2) "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective" pursuant to *Strickland* [*v. Washington*, 466 U.S. 668 (1984)]." *Martinez*, 566 U.S. at 14.  In such instances, the habeas petitioner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

As an initial matter, neither the Supreme Court nor the Eleventh Circuit has interpreted *Martinez* as narrowly as the State does.  *Martinez* applies to a petitioner's "procedural default" of a claim.  566 U.S. at 14.  Federal courts treat unexhausted claims as procedurally defaulted in two circumstances:  (1) where the claim was presented in state court and rejected on the independent and adequate state ground of procedural bar or default, *see Coleman v. Thompson*, 501 U.S. 722, 734–35 and n.1 (1991); and (2) where the claim was never presented in state court, and a return to state court would be futile because the claim would clearly be barred by state procedural rules, *see Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir.

2014) (citation omitted). Brooks' claims fall under the second circumstance, so he may establish cause under *Martinez*, but only if he satisfies its requirements.

The state post-conviction court did not appoint counsel to represent Brooks in the Rule 3.850 proceeding. So Brooks has satisfied the first requirement under *Martinez*.

However, Brooks has not satisfied the second requirement, because he has not shown that his IATC claim is substantial, i.e., that it has "some merit." The *Strickland* test applies to claims that counsel was ineffective during the plea process. *See Lafler v. Cooper*, 566 U.S. 156, 162–63, 168 (2012) (applying *Strickland*'s two part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer). As discussed *supra*, *Strickland*'s first prong requires a defendant to show that counsel's representation fell below an objective standard of reasonableness. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (quoting *Strickland*, 466 U.S. at 688).

There is no merit to Brooks' claim that defense counsel's failure to file a timely notice of alibi was due to deficient performance. The trial transcript demonstrates that Brooks did not inform counsel about Ms. Deriemacker as a potential alibi witness until July 13, 2015 (*see* Ex. 8 at 69), which was the cut-off date for counsel's filing a notice of alibi in compliance with Rule 3.200 of the Florida

Rules of Criminal Procedure.  Defense counsel could not file a notice of alibi until he determined that Ms. Deriemacker could provide specific information as to where Brooks was at the time of the burglaries and thefts.  *See* Fla. R. Crim. P. 3.200.  As the trial court noted, the charges against Brooks had been pending for over two-and-a-half years, yet Brooks chose not to disclose the alleged alibi witness to counsel until the eleventh hour (*see id.* at 73).  The blame for the defense's inability to call the alleged alibi witness lies at Brooks' feet, not defense counsel's.

Brooks also faults defense counsel for failing to advise him that his unexplained possession of recently stolen property gave rise to "a legal presumption that he committed the burglary," in Brooks' words (ECF No. 1 at 8–9).  Brooks is referring to Florida's standard jury instructions on burglary, which include the following permissive inference if there is evidence that the defendant possessed recently stolen property:

> Proof of possession by an accused of property recently stolen by means of a burglary, unless satisfactorily explained, **may** justify a conviction of burglary **if the circumstances of the burglary and the possession of the stolen property convince you beyond a reasonable doubt that the defendant committed the burglary**.

(*see* Ex. 8 at 322) (emphasis added); *see also* Fla. Standard Jury Instructions in Criminal Cases, Part Two:  Instructions on Crimes, Part 13, § 13.1 (derived from Florida Statutes § 812.022(2)).

The jury instruction did not require the jury to presume Brooks' guilt from the fact that he possessed recently stolen property; it simply permitted the jury to infer his guilt if his possession of the property was unexplained and the circumstances of the burglaries, together with his possession of the property, convinced them beyond a reasonable doubt that he committed the burglaries.  So to the extent Brooks faults defense counsel for failing to advise him that the jury was **required** to presume his guilt, that failure was not deficient, because such advice would have been an incorrect statement of the law.

Additionally, Brooks failed to state a substantial claim of *Strickland* prejudice. If a plea offer has been rejected due to counsel's allegedly deficient performance, a defendant shows prejudice by demonstrating a reasonable probability that:  (1) he would have accepted the earlier plea offer had he been afforded effective assistance of counsel during plea negotiations; (2) the plea would have been entered without the state canceling it or the trial court refusing to accept it; and (3) the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.  *See Lafler*, 566 U.S. at 164.

Brooks knew about the jury instruction on the permissive inference two months prior to his trial in this case, because it was given to the jury at his trial on

two severed burglary and theft charges on May 12, 2015.[7]  Brooks does not allege the State canceled the plea offer before he knew about the jury instruction.

Additionally, it strains credulity for Brooks to suggest he would not have insisted on going to trial had he known about the jury instruction.  The inference permitted by the jury instruction was far less damning than the video of his admitting his guilt.  And Brooks clearly knew that the jury would see the video if he insisted on going to trial (as opposed to accepting a plea offer).  Brooks' assertion that he would not have insisted on trial had he known about the jury instruction is specious.

Brooks procedurally defaulted Ground Three, and he has not shown he is entitled to federal review of the claim under *Martinez*.  Therefore, Brooks is not entitled to federal habeas relief on Ground Three.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice

---

[7]  The trial transcript of the earlier trial is part of the record in Brooks' habeas case challenging his convictions on the severed counts.  *See Brooks v. Inch*, Case No. 3:19cv1662/LAC/EMT, ECF No. 18-6 (N.D. Fla. Mar. 25, 2020).

of appeal must still be filed, even if the court issues a certificate of appealability.  28

U.S.C. § 2254 Rule 11(b).

Section 2253(c) permits the issuance of a COA only where a petitioner has

made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El v.*

*Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the

only question is whether the applicant has shown that 'jurists of reason could

disagree with the district court's resolution of his constitutional claims or that jurists

could conclude the issues presented are adequate to deserve encouragement to

proceed further.'"  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537

U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the

undersigned recommends that the district court deny a certificate of appealability in

its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order,

the court may direct the parties to submit arguments on whether a certificate should

issue."  Thus, if there is an objection to this recommendation by either party, that

party may bring this argument to the attention of the district judge in the objections

permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 28th day of July 2020.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**